UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOT Operating Authority, Inc.,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>DOT Operations, Inc.; Narek Matshkalyan; and Yuri Sarkisyan,<br><br>　　　　　　　Defendants. | Case No. 2:24-cv-03173-SPG-AS<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br>**[ECF NO. 40]** |

　　　Before the Court is the Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 40 ("Motion")) filed by Defendants DOT Operations, Inc., Narek Matshkalyan, and Yuri Sarkisyan (together, "Defendants"). Defendants have also filed a Request for Judicial Notice in support of their Motion.[1] (ECF No. 40-3 ("RJN")). Plaintiff DOT Operating Authority, Inc. ("Plaintiff") opposes both the Motion and the RJN. (ECF No. 43 ("Opp.")). Defendants have filed a reply. (ECF No. 44 ("Reply")). Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds this Motion suitable for resolution without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

---

[1] Defendants have titled their RJN as "In Support of the Motion for Judgment on the Pleadings." Given that Defendants have not filed a Motion for Judgment on the Pleadings, however, the Court construes the RJN as in support of Defendants' Motion to Dismiss. (RJN).

For the reasons set forth below, the Court DENIES in part and GRANTS in part Defendants' Motion and DENIES Defendants' Request for Judicial Notice. Further, the Court DISMISSES without prejudice and with leave to amend Plaintiff's First Amended Complaint as to Claims Five through Seven.

## I.  BACKGROUND

Plaintiff operates multiple websites which "provide assistance with legal paperwork and compliance filings for those in the trucking industry to meet federal and state transportation requirements." (ECF No. 35 ("FAC") ¶ 9). According to Plaintiff, Defendants similarly operate websites but, in so doing, have engaged in copyright, trademark, and trade dress infringement of Plaintiff's websites and service marks. *See generally* (FAC). Plaintiffs also allege Defendants have made false claims regarding their date of founding. (*Id.*). On April 17, 2024, Plaintiff initiated this action, alleging in its Complaint seven claims against Defendants related to their purported copyright, trademark, and trade dress infringement of certain websites and service marks owned by Plaintiff and one claim under the Lanham Act for false advertising. (ECF No. 1). On June 17, 2024, Plaintiff's filed an answer to Defendants' Complaint. (ECF No. 19). On January 14, 2025, during discovery, the parties stipulated that, instead of Defendants filing a motion challenging the pleadings, Plaintiff could file the FAC ("Stipulation") to "clarify the allegations and [] provide additional exhibits, without substantively altering the claims at issue to address Defendants' concerns raised in during [*sic*] the meet and confer between the Parties." (ECF No. 32 ("Stipulation") at 2). Pursuant to the parties' Stipulation, Plaintiff was to file the FAC by January 24, 2025, and Defendants' response was due by February 7, 2025. (*Id.*). The Court granted the parties' Stipulation, (ECF No. 33), and Plaintiff filed its FAC on January 22, 2025. (FAC). The FAC contains the same eight claims as the initial Complaint and includes additional supporting exhibits. *See* (*id.*). In particular, the FAC raises the following claims: (1) four claims regarding Defendants' alleged copyright infringement of Plaintiff's four websites, (a) www.ucr.online ("UCR Website") (*Id.* ¶¶ 13–24 ("Claim One")), (b) www.dotoperatingauthority.com ("DOA

Website") (*Id.* ¶¶ 25–36 ("Claim Two")), (c) www.newmexicoweightdistance.com ("New Mexico Website") (*Id.* ¶¶ 37–48 ("Claim Three")), and (d) www.kentuckyweightdistance.com ("Kentucky Website") (*Id.* ¶¶ 49–60 ("Claim Four")); (2) two claims regarding Defendants' alleged trademark infringement of two service marks owned by Plaintiff, (a) DOT OPERATING AUTHORITY (*Id.* ¶¶ 61–69 ("Claim Five")), and (b) UCR.ONLINE (*Id.* ¶¶ 70–79 ("Claim Six")); (3) one claim regarding Defendants' alleged trade dress infringement of the UCR Website (*Id.* ¶¶ 80–89 ("Claim Seven")); and (4) false advertising under the Lanham Act regarding statements on Defendants' websites concerning the date of the founding of Defendants' business (*Id.* ¶¶ 90–95 ("Claim Eight")).

On February 7, 2025, Defendants filed the instant Motion, seeking to dismiss Claims One through Seven only. (Motion).[2] Defendants also seek judicial notice of four exhibits in support of their Motion consisting of two exhibits that are screenshots of government-

---

[2] In its Opposition, Plaintiff argues that Defendants failed to timely meet-and-confer before filing this Motion, because the parties conferred on February 4, 2025, only three days before Defendants filed the Motion. *See* (Opp. at 9). Defendants respond that they contacted Plaintiff's counsel on January 31, 2025, to schedule a meet and confer, and that the parties discussed the substance of this Motion on February 4, 2025. (Reply at 8; ECF No. 44-1 ("Papazian Decl.") ¶ 4, Ex. C). Moreover, Defendants contend that Plaintiff was on notice as to at least the possibility of this Motion since January 14, 2025, because the parties stipulated on that date for Plaintiff to file an amended complaint by January 24, 2025, to avoid Defendants filing a motion for judgment on the pleadings, and also agreed pursuant to the Stipulation that Defendants would respond to the amended complaint by February 7, 2025. (Reply at 8; Papazian Decl. ¶ 2; Stipulation). Central District of California Local Rule 7-3 requires that parties meet-and-confer seven days before filing a motion. C.D. Cal. L.R. 7-3. The Court does not condone what appears to be Defendants' lateness in scheduling and holding the meet-and-confer and counsels both parties to comply with the Local Rules and the Court's Standing Order regarding the meet-and-confer requirement at least seven days before filing any future motions. Under the circumstances present here, however, the Court declines to impose sanctions. Plaintiff was at least aware of the likelihood of this Motion well before February 4, 2025, and Defendants reached out seven days before filing the Motion to schedule a meet-and-confer regarding its substance.

-3-

issued websites and two exhibits that are screenshots of Plaintiff's websites. *See generally* (RJN).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). When resolving a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted). When ruling on a motion under Rule 12(b)(6), the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements" are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 681 (internal quotation marks and citation omitted). Dismissal is appropriate "where the

complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

### III. DISCUSSION

Defendants contend that Claims One through Seven fail to state a claim upon which relief may be granted. Claims one through four assert copyright infringement of the UCR Website, the DOA Website, the New Mexico Website, and the Kentucky Website, respectively. Claims Five and Six allege trademark infringement of the service marks DOT OPERATING AUTHORITY and UCR.ONLINE, respectively. Claim Seven alleges trade dress infringement of the UCR Website. The Court addresses these claims in turn.

#### A. Copyright Infringement – Claims One through Four

To establish copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act." *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (to establish copyright infringement, a plaintiff must show: "ownership of a valid copyright and [] copying of constituent elements of the works that are original."). Certificates of registration of copyrighted works are *prima facie* evidence of a valid copyright when the date of registration is within five years of the first publication of the copyrightable work. 17 U.S.C. § 410(c); *Thomson v. HMC Grp.*, 2014 WL 12589312, at *3 (C.D. Cal. Feb. 18, 2014). Certificates of registration also create a presumption of copyrightability of the work. *See Lizalde v. Advanced Planning Servs., Inc.*, 875 F. Supp. 2d 1150, 1160 (S.D. Cal. 2012).

Plaintiff challenges the FAC's purportedly "conclusory allegations of . . . the existence of copyright registrations." (ECF No. 40-1 ("Motion") at 9). However, Plaintiff attached valid Certificates of Registration for all its websites to the FAC. (ECF No. 35-1 ("UCR Certificate"); ECF No. 35-2 ("DOA Certificate"); ECF No. 35-3 ("New Mexico Certificate"); ECF No. 35-4 ("Kentucky Certificate")). All four Certificates have dates of publication within five years of the listed date of copyright registration. Therefore, the

Certificates create a presumption that Plaintiff holds valid copyrights in the UCR Website, DOA Website, New Mexico Website, and Kentucky Website. Moreover, the FAC alleges that Plaintiff owns the copyright registrations and built the websites that were copyrighted: "The [UCR Website, DOA Website, New Mexico Website, and Kentucky Website] [were] built by Plaintiff with [their] own original layout and content for which Plaintiff has obtained [the UCR Certificate, DOA Certificate, New Mexico Certificate, and Kentucky Certificate, respectively]." *See* (FAC ¶¶ 14, 26, 38, 50). For the purposes of Rule 8, Plaintiff has sufficiently pleaded its ownership of a valid copyright.

Defendants also argue "the FAC provides insufficient conclusory allegations of copying" and, because neither deposit copies nor "any other depiction of the copyrighted material" are attached to the FAC, Defendants do not have notice of the elements or portions over which Plaintiff is claiming the copyright and which elements or portions Plaintiff claims were infringed. (Motion at 8–9). In particular, Defendants contend that Plaintiff's attachment to the FAC of only a "*representative sample* of the of the [*sic*] infringing content" is insufficient to put Plaintiff on notice as to "what [] exact materials [] Plaintiff is attempting to protect." (*Id.* at 9 (emphasis added)). Plaintiff responds that, because it attached copyright registrations and "exhibits that identify the copied material and compares it to the copyrighted material," it has provided "more than enough to give clear notice of Plaintiff's copyright claims." (Opp. at 12–14).

Although the FAC does not provide extensive detail, Plaintiff has pleaded its allegations of copying with the specificity required by Rule 8.[3] The FAC alleges that "Defendants have reproduced, displayed, advertised, offered for sale, and distributed

---

[3] The Court notes, however, that the lack of inclusion of deposit copies alone does not lead to this result. *See Thomson v. HMC Grp.*, 2014 WL 12589312, at *5 n.3 (C.D. Cal. Feb. 18, 2024) ("Plaintiff [is] not required to provide a copy of the copyright deposit for the claim to be sufficiently definite to allow defendants to prepare a response."); *see also Browne v. Donalds*, 2024 WL 3468898, at *11 (C.D. Cal. May 28, 2024) ("[I]t is not necessary at this stage for Plaintiffs to provide copyright registration numbers or registration certificates to plausibly allege copyright ownership.").

unauthorized copies of significant portions of Plaintiff's [UCR Website, DOA Website, New Mexico Website, and Kentucky Website] contained in the [UCR Certificate, DOA Certificate, New Mexico Certificate, and Kentucky Certificate, respectively] in connection with [Defendants' websites]. To the extent that some portions have not been copied verbatim, the copyright portions of the [UCR Website, DOA Website, New Mexico Website, and Kentucky Website] have been used to create derivative works that are substantially the same as the original." (FAC ¶¶ 16, 28, 40, 52). Moreover, the FAC attaches comparison charts, that compare the purportedly infringing content of Defendants' websites with the infringed portions of Plaintiff's websites. *See* (FAC ¶¶ 16, Exs. 8–9; 28, Ex. 10; 40, Ex. 11; 52, Ex. 12; 84, Ex. 13). These charts explain that they provide "[a] [r]epresentative [s]ampling of infringing content[]" as compared to "[p]ortions of Plaintiff's [w]ebsite[s]." *See* (*id.*).

In the context of a copyright infringement claim, courts in this District have found that "representative acts" may provide sufficient notice of the claim and the grounds upon which it rests to satisfy the requirements of Rule 8. *See, e.g.*, *Browne*, 2024 WL 3468898, at *16 ("A complaint can identify representative acts of infringement instead of providing an exhaustive list."); *Paramount Pictures Corp. Axanar Prods., Inc.*, 2016 WL 2967959, at *3 (C.D. Cal. May 9, 2016) (finding that pleading "representative acts" may be sufficient to meet the Rule 8 standard, as opposed to a "comprehensive listing"); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001) (rejecting a heightened "particularity" pleading standard under Rule 9 for copyright claims). This is not to say that "representative samples" are per se sufficient under Rule 8: "[t]he question [] boils down to whether or not [Defendants] ha[ve] fair notice of the allegations against [them]." *Perfect 10*, 167 F. Supp. 2d at 1121. Whether Plaintiff has sufficiently set forth the grounds demonstrating its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 440 U.S. at 555 (internal quotations and citation omitted). While the FAC contains some "formulaic recitation of the elements," *see, e.g.*, (FAC ¶¶ 16, 28, 40, 52), it also provides

representative samples of Defendants' purportedly infringing activity that are specific to the four websites upon which Plaintiff bases its copyright claims. Therefore, the Court finds that the FAC is sufficient to put Defendants on notice of Plaintiff's claims as to Plaintiff's copying allegations, as well as its grounds for relief, as is required by Rule 8.

Although Defendants cite to *Salt Optics, Inc. v. Jand, Inc.*, 2010 WL 4961702, at *6 (C.D. Cal. Nov. 19, 2010) and *Graduation Solutions LLC v. Luya Enterprise Inc.*, 2021 WL 2349346, at *5 (C.D. Cal. Mar. 31, 2021) in support of dismissal, these cases do not change the Court's finding that the allegations are sufficient. *Salt Optics* involved a pleading that "present[ed] confusion regarding whether a given fact was meant to support a claim of copyright or trade dress infringement." 2010 WL 4961702, at *6. For that reason, the court instructed that the "Plaintiff need[ed] to delineate more clearly which facts it allege[d] in support of its trade dress claim and which facts it allege[d] in support of its copyright claim." *Id. Graduation Solutions* also addressed copyright infringement and trade dress claims together, concluding that the pleading there did "not specify which aspects of Defendants' websites infringed Plaintiff's copyright or trade dress," because the pleading was "unclear how [Plaintiff's] copyrighted material differ[ed] from what Plaintiff describe[d] as its website's unique trade dress." 2021 WL 2349346, at *5. The FAC does not suffer from the same type of pleading deficiencies regarding its copyright and trade dress claims. The Court therefore finds the FAC plausibly pleads copyright infringement and DENIES Defendants' Motion as to Claims One through Four for copyright infringement of the UCR Website, DOA Website, New Mexico Website, and Kentucky Website, respectively.

### B. Trademark Infringement – Claims Five and Six

Trademarks represent "a limited property right in a particular word, phrase, or symbol." *New Kids on the Block v. New Ams. Pub., Inc.*, 971 F.2d 302, 306 (9th Cir. 1992). To prevail on a trademark infringement claim, a plaintiff must prove: "(1) that [the plaintiff] has a protectable ownership interest in [a] mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion, thereby infringing upon the [plaintiff's]

right to the mark." *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). Federal registration of a mark on the principal register constitutes prima facie evidence of the validity of the mark. 15 U.S.C. § 1057(b). If a plaintiff alleges infringement of a federally-registered mark placed on the principal register, then the plaintiff is entitled to a presumption that the mark is not generic. *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir.2005).

Courts have recognized four categories of marks with differing levels of potential trademark protection. The categories, starting from no protection to most protected, are: "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful terms." *Elliott v. Google, Inc.*, 860 F.3d 1151, 1155 (9th Cir. 2017); *Yellow Cab*, 419 F.3d at 927 (citing *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005)). "Generic terms are those used by the public to refer generally to the product rather than a particular brand of the product." *Brookfield Commc'ns. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1058 n.19 (9th Cir.1999); *see also KP Permanent Make-Up*, 408 F.3d at 602 (Generic marks "identify the product, rather than the product's source."). Accordingly, generic terms cannot receive trademark protection because they do not identify the source of a product." *Elliott*, 860 F.3d at 1155; *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999). Descriptive terms can receive trademark protection if they have "acquired 'secondary meaning' in the minds of consumers." *Filipino Yellow Pages*, 198 F.3d at 1147 (citation omitted). Arbitrary or fanciful marks are "automatically entitled to protection because they naturally serve to identify a particular source of a product." *Elliott*, 860 F.3d at 1155 (quoting *KP Permanent Make-Up*, 408 F.3d at 602).

To determine if a purported mark is generic, courts frequently apply the "who-are-you/what-are-you" test. *Yellow Cab*, 419 F.3d at 929 (citing *Filipino Yellow Pages*, 198 F.3d at 1147). If a purported mark answers the questions, "Who are you?," "Where do you come from?," or "Who vouches for you?," then the mark is not generic, because it does more than just identify the product, it also signifies "the product's source." *Id.* (citing *KP*

*Permanent Make-up*, 408 F.3d at 602). But if a purported mark answers the question, "What are you?," then it may properly be considered generic, since it does no more than identify the product. *Id.*

Defendants challenge that the terms DOT OPERATING AUTHORITY and UCR.ONLINE are generic, and therefore are not entitled to protection. (Motion at 11–13). Plaintiff contends that, "whether a mark is generic cannot be decided at the pleading stage," because genericness is a question of fact. (Opp. at 13–15). Plaintiff alternatively contends it sufficiently alleged in its FAC the terms DOT OPERATING AUTHORITY and UCR.ONLINE are distinctive because they acquired a secondary meaning, and therefore Plaintiff has stated a claim for trademark infringement. (Opp. at 15).

Plaintiff is correct that, "whether a mark is generic is a question of fact." *Yellow Cab*, 419 F.3d at 929 (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 840 (9th Cir.2001). However, that genericness is a question of fact alone does not end the inquiry for a court on a motion to dismiss. *See, e.g.*, *Beyond Blond Productions, LLC v. Heldman*, 2022 WL 2787536, at *3 (C.D. Cal. June 8, 2022) ("[T]he Court may make findings of fact to determine genericness based on the pleadings and judicially noticeable facts."); *U.S. Vessel Documentation v. Form Techs., LLC*, 2017 WL 8232081, at *3 (C.D. Cal. Sept. 21, 2017) ("[C]ourts are not precluded from determining fact-specific trademark questions on a motion to dismiss."); *see also Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 991 (9th Cir. 2025); *Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 789 (9th Cir.1981). Instead, a court must take as true all allegations in the FAC and, while resolving all reasonable inferences in favor of the plaintiff, determine whether the plaintiff's pleading is sufficient to state a claim for trademark infringement. *Solid 21, Inc. v. Breitling USA, Inc.*, 512 Fed. App'x 685, 687 (9th Cir. 2013) ("[T]he inquiry under Rule 12(b)(6) is into the adequacy of the pleadings, not the adequacy of the evidence."). If the facts pleaded do not state a claim for trademark infringement, then the court may dismiss the claim.

With that framework in mind, the Court considers first whether Plaintiff has alleged a protectible ownership interest in the marks DOT OPERATING AUTHORITY and UCR.ONLINE, and then turns to whether Plaintiff has plausibly pleaded that Defendants' use of the marks is likely to cause consumer confusion. *Dep't of Parks & Recreation*, 448 F.3d at 1124.

1. Protectible Ownership Interest in DOT OPERATING AUTHORITY

Plaintiff has not alleged that DOT OPERATING AUTHORITY is a registered mark, and therefore its allegations regarding the mark are not entitled to a presumption that the mark is not generic. *Yellow Cab*, 419 F.3d at 928. Plaintiff does allege, however, that DOT OPERATING AUTHORITY is a "service mark" that "ha[s] been used continuously in commerce since June, [sic] 2017 in connection with the Plaintiff's Trucking Support Services. DOT OPERATING AUTHORITY is distinctive on its own for the services offered." (FAC ¶ 62). Plaintiff also alleges that these Trucking Support Services include "certify[ing] truck drivers" with the U.S. Department of Transportation, and "providing license filing services" for those in the trucking industry. (*Id.* ¶ 9). A printout of the DOA Website explains that "DOT Operating Authority offers full-spectrum consulting and filing services" and that DOT Operating Authority "remain[s] a number 1 contact with the FMCSA." (ECF No. 35-10).

Applying the "who-are-you/what-are-you" test to the facts in the FAC and drawing all reasonable inferences in favor of the Plaintiff, the Court finds that Plaintiff has plausibly pleaded at this early stage that DOT OPERATING AUTHORITY is not generic. If one asks, "What are you?" to DOT OPERATING AUTHORITY, the response would not necessarily be "DOT Operating Authority." Instead, the response could be, as the FAC and DOA Website suggest, that it offers support to certify truck drivers or "full-spectrum consulting and filing services" for commercial registrations and filings with FMCSA and other related agencies. Defendants contend that DOT OPERATING AUTHORITY "is descriptive in that it describes the services [Plaintiff] provides to customers, i.e., obtaining a Department of Transportation (i.e., 'DOT') number and getting authority to operate their

commercial vehicles." (Motion at 12). While that might be the case, it is just as likely that the mark responds differently, as indicated above. Accordingly, at this early stage in the proceedings, the Court does not find that the mark DOT OPERATING AUTHORITY is generic.

Nevertheless, even if Plaintiff has plausibly pleaded that DOT OPERATING AUTHORITY is a descriptive term, Plaintiff has not plausibly pleaded that it has achieved secondary meaning to consumers, as is required to afford it trademark protection. *See Filipino Yellow Pages*, 198 F.3d at 1147. Plaintiff's FAC alleges that, "since June, [*sic*] 2017," Plaintiff has used the mark DOT OPERATING AUTHORITY "in connection with" its services, (FAC ¶ 62), and that "DOT OPERATING AUTHORITY has acquired a second meaning as the name of the source of Plaintiff's Trucking Support services." (*Id.*). Defendants are correct that these allegations are "wholly conclusory." *See* (Motion at 12). These allegations do not give Defendants sufficient notice of the "grounds upon which" Plaintiff's allegations of secondary meaning rest. *See Twombly*, 550 U.S. at 555.

Plaintiff argues that it alleges more than just conclusions, pointing to the amount of time the mark has been in use and the association of the mark with Plaintiff's services. But neither of these allegations are sufficient, standing alone, to suggest a secondary meaning to the consuming public of the mark. Accordingly, Defendants' Motion is thus GRANTED as to Claim Five. The Court DISMISSES without prejudice and with leave to amend Claim Five.

        2.        Protectible Ownership Interest in UCR.ONLINE

Plaintiff has not alleged that UCR.ONLINE is a registered mark, and therefore it is not entitled to a presumption that the mark is not generic. *Yellow Cab*, 419 F.3d at 928. Plaintiff does allege, however, that UCR.ONLINE is "a description of Unified Carrier Registrations online," (FAC ¶ 72), and a printout of Plaintiff's UCR Website attached to the FAC shows the acronym "UCR" and the phrase "UCR.online" in close proximity to the phrase "Unified Carrier Registration." (ECF No. 35-8). The website further explains that, "if part of your business requires interstate travel, then you must submit your Unified

1  Carrier Registration," as required by federal law. (*Id.*). Plaintiff alleges that Plaintiff uses
2  the mark "[UCR.ONLINE] to identify its Trucking Support Services." (FAC ¶ 72).

3  Applying the "who-are-you/what-are-you" test to the facts in the FAC and drawing
4  all reasonable inferences in favor of the Plaintiff, the Court finds that Plaintiff has plausibly
5  pleaded at this early stage of the proceedings that UCR.ONLINE is not generic. If one
6  asks, "What are you?" to UCR.ONLINE, it may reasonably respond with something other
7  than "UCR.ONLINE;" it could, for example, respond that it provides "unified carrier
8  registration, on the internet." Thus, at this early stage, it is unclear if the "consuming
9  public" of Plaintiff's services may consider "UCR.ONLINE" to be generic.[4]
10 *Powerlineman.com, LLC v. Kackson*, 2007 WL 3479562, at *3 (E.D. Cal. Nov. 15, 2007)
11 ("Whether 'powerlineman' or 'power lineman' is understood by the consuming public as
12 the general name of an occupation is a question of fact inappropriate for resolution on a
13 motion to dismiss."). Therefore, the Court finds that Plaintiff has sufficiently alleged at
14 the pleading stage that UCR.ONLINE is not a generic term. *Intel Corp. v. Americas News
15 Intel Pub., LLC*, 2010 WL 2740063, at *3 (N.D. Cal. July 12, 2010) ("Despite the potential
16 strength of [the Defendant's] argument, the Court finds that dismissing [Plaintiff's]
17 Complaint on this ground would be premature.").

---

[4] Defendants ask the Court to ignore the ".online" portion of Plaintiff's alleged mark UCR.ONLINE, pointing to out-of-circuit cases that find that proposed marks that include "top-level domain" signifiers like ".com" or ".online," are not saved from genericness by their inclusion in the proposed mark. (Motion at 13); s*ee, e.g.*, *Booking.com B.V. v. USPTO*, 915 F.3d 171, 185 (4th Cir. 2019). However, both the Supreme Court and the Ninth Circuit have rejected such a bright-line approach, and so this Court declines to draw such a distinct line here. *See USPTO v. Booking.com B.V.*, 591 U.S. 549, 560 (2020) ("[W]e do not embrace a rule automatically classifying [generic.com] terms as nongeneric."); *Advertise.com, Inc. v. AOL Advertising, Inc.*, 616 F.3d 974, 978 (9th Cir. 2010) (although "Adveritisng.com" consists of two generic terms, "we look to the mark as a whole and that the combination of generic terms may, in some instances, result in a distinctive mark."). Instead, whether a term which includes ".com" is generic "depends on whether consumers in fact perceive that term as the name of a class, or, instead, as a term capable of distinguishing among members of the class." *Booking.com*, 591 U.S. at 561.

As with Plaintiff's other purported trademark, even though Plaintiff may have plausibly pleaded that UCR.ONLINE is not generic, it has not plausibly pleaded that the term has obtained secondary meaning to consumers sufficient to afford it protection as a descriptive term. *See Filipino Yellow Pages*, 198 F.3d at 1147. The FAC alleges the following regarding UCR.ONLINE's purported secondary meaning: "since May, [sic] 2022, [UCR.ONLINE] has acquired a second meaning as the name of Plaintiff's Trucking Support services through Plaintiff's promotion of the mark and consumer recognition of the mark. As a result of such secondary meaning, Plaintiff has acquired trademark service marks rights under the Lanham Act." (FAC ¶ 72). Once again, this allegation is insufficient to provide the grounds upon which Plaintiff supports that "actual purchasers of the product bearing the claimed trademark associate the trademark with [Plaintiff]." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985). Accordingly, Defendants' Motion is GRANTED as to Claim Six. The Court DISMISSES without prejudice and with leave to amend Claim Six.[5]

### C. Trade Dress Infringement – Claim Seven

Defendants also challenge Claim Seven, for trade dress infringement, related to UCR.online, arguing: (1) the FAC fails to list any protectible elements of trade dress; and (2) the FAC does not allege facts to support that the UCR Website's trade dress is non-functional, inherently distinctive, or has acquired a secondary meaning. (Motion at 14–16).

Trade dress is protected under the Lanham Act, 15 U.S.C. § 1125(a). To state a claim for trade-dress infringement, a plaintiff must plausibly plead "that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." *Art*

---

[5] Because the FAC fails to include sufficient facts to support that DOT OPERATING AUTHORITY or UCR.ONLINE have achieved a secondary meaning as descriptive terms, or contain any allegations that the terms are suggestive, arbitrary, or fanciful, the Court declines to address whether Plaintiff has sufficiently pleaded consumer confusion, the second element of trademark infringement.

-14-

*Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009). Functional product features are those which are "essential to the use or purpose of the article" or "affect[] the cost or quality of the article." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001). Secondary meaning may be obtained when "the purchasing public associates the trade dress with a particular source." *Id.* at 1262 (citation omitted). Courts are instructed to "exercise particular caution" when extending protection for trade dress "because such claims present an acute risk of stifling competition." *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp.2d 1168, 1174 (N.D. Cal. 2007) (internal quotation marks and citation omitted).

Courts in the Central District have recognized that, "[w]hether a website's design can constitute protectable trade dress under the Lanham Act is a fairly unsettled issue." *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1239 (C.D. Cal. 2014); *see also Salt Optics, Inc.*, 2010 WL 4961702, at *5 ("[T]he Ninth Circuit has yet to explicate the precise boundaries of trade dress law as applied to the internet."). But under "certain circumstances," the "look and feel" of a website may be considered trade dress. *Lepton Labs*, 55 F. Supp. 3d at 1239. "Trade dress is the composite tapestry of visual effects," and so "the mark must be examined as a whole, not by its individual constituent parts." *Clicks Billiards*, 251 F.3d at 1259. A "mere cataloguing of a website's features" is not sufficient to describe protectable trade dress because it "does not give defendants adequate notice of a plaintiff's trade dress claim." *Salt Optics*, 2010 WL 4961702, at *5. This deficiency is "exacerbated when a plaintiff, in a complaint, also employs language suggesting that the listed components are some among many of the elements comprising the alleged trade dress." *Id.* (internal quotations and citation omitted).

The Court finds that the FAC has not sufficiently pleaded the elements that comprise the UCR Website's trade dress to provide Defendants with adequate notice of the claim. The FAC does not even attempt to provide a list—exhaustive or non-exhaustive—of what elements Plaintiff considers to be trade dress of the UCR Website. Instead, Plaintiff merely states that it "has valid and protectible trade dress rights in the look and feel of the [UCR

Website,]" and, this trade dress "is non-functional and inherently distinctive, in commercial use, and has acquired substantial secondary meaning." (FAC ¶ 81). Plaintiff does not cure this deficiency by providing a "representative sample of the infringement of Plaintiff's trade dress," in exhibits, as it purports to do. (*Id.* ¶ 84; Opp. at 16). Providing a representative sample only is akin to "trade dress allegations that are offered by way of illustration, not by limitation," which are insufficient to support a trade dress claim. *Salt Optics*, 2010 WL 4961702, at *5 (finding that "trade dress allegations that are offered by way of illustration, not by limitation," are insufficient to give adequate notice of what constitutes Plaintiff's alleged trade dress). Nowhere in the FAC or the exhibits does Plaintiff provide any description—let alone a partial description—of the elements of its alleged trade dress. *See Tangle*, 125 F.4th at 999 ("merely providing photographs of some products and partial descriptions is insufficient" to plead a claim of trade dress infringement). Plaintiff therefore provides insufficient notice to Defendants of which elements of the UCR Website that contribute to its "look and feel" are sufficient to articulate a trade dress claim.[6] *See Lepton Labs*, 55 F. Supp. 3d at 1239. Defendants' motion to dismiss is thus GRANTED as to Claim Seven. Plaintiff's Claim Seven is DISMISSED without prejudice and with leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the Motion to Dismiss as to Claims One through Four and GRANTS the Motion to Dismiss as to Claims Five through Seven. The Court therefore DISMISSES the FAC as to Claims Five through Seven, without prejudice and with leave to amend. The Court grants Plaintiff fourteen (14) calendar days

---

[6] Because the Court finds that Plaintiff has not pleaded its trade dress claim in accordance with the requirements in Rule 8, it declines to address Defendants' alternate argument that Plaintiff has failed to plead that the alleged trade dress of UCR Website is non-functional, inherently distinctive, and has acquired secondary meaning. (Motion at 20).

from the date of this Order to file an amended pleading, if any, that cures the deficiencies identified in this Order.[7]

**IT IS SO ORDERED.**

DATED: March 20, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

---

[7] Because the Court finds the matters about which Defendants requests the Court take judicial notice are not necessary to the decision on this Motion, it DENIES the requests for judicial notice. *See, e.g., Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 976 (9th Cir. 2006) (district court may deny judicial notice of documents it does not rely upon and which are not pertinent or necessary to its ruling on motion to dismiss).